# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SUA INSURANCE CO., | ) | 1:08cv0129 DLB |
| | ) | |
| | ) | ORDER GRANTING DEFENDANT'S |
| | ) | MOTION FOR SUMMARY JUDGMENT |
| Plaintiff, | ) | |
| | ) | (Document 23) |
| v. | ) | |
| | ) | |
| SILVER OAK CONSTRUCTION, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

On October 14, 2008, Defendant Silver Oak Construction, Inc. ("Silver Oak") filed the instant motion for summary judgment. The motion was heard on January 9, 2009, before the Honorable Dennis L. Beck, United States Magistrate Judge.[1] Patrick Gorman appeared on behalf of Silver Oak. Michael Frey appeared on behalf of Plaintiff SUA Insurance, Co. ("SUA").

## BACKGROUND

SUA filed the instant action for declaratory relief and recision of an insurance contract on January 28, 2008. The action was filed against Silver Oak and its president, Karl Wolf.[2]

According to the Complaint, SUA is a corporation organized in Illinois and authorized to conduct insurance business in California. Its causes of action are based on its belief that Silver Oak provided material misrepresentations and/or concealed material facts, on the December 20, 2005, applications for workers' compensation insurance, and on the December 6, 2006,

---

[1] The parties consented to the jurisdiction of the Magistrate Judge for all purposes.

[2] Karl Wolf was dismissed from this action on March 21, 2008, pursuant to the parties' stipulation.

1

applications to extend coverage. Specifically, SUA contends that Silver Oak's answer of "No" to the question asking if there were any tax liens or bankruptcies within the last five years was false. SUA did not discover the misrepresentation/concealment until it undertook an investigation in connection with the November 2007 workers' compensation claim of Oberlin Sanchez ("Sanchez"), who was injured when he fell off a roof in the course and scope of employment on or about November 1, 2007.

The first cause of action seeks a declaration that the workers' compensation policy issued by SUA to Silver Oak for the period December 20, 2006, to December 20, 2007, provides no coverage and gives rise to no obligation on the part of SUA to either defend, indemnify or otherwise extend benefits on behalf of Silver Oak for claims arising from Sanchez' bodily injuries. SUA contends that the policies were void because of the material misrepresentations on the applications.

The second cause of action seeks to rescind the insurance contract based on the above misrepresentations and/or concealment of facts. Complaint, ¶ 14. SUA contends that had it known the true facts, it would not have issued either policy. SUA offers to return all consideration paid by Silver Oak and demands a return of all money paid by SUA for a defense of Sanchez' claim and in connection with his claim for benefits.

On October 14, 2008, Silver Oak filed the instant motion for summary judgment based on its belief that the answers provided were truthful as of the date of the applications and insofar as they pertained to Silver Oak.

SUA opposed the motion on December 24, 2008, arguing that the questions also pertained to Wolf, as the president and sole owner of Silver Oak.

Silver Oak filed its reply on January 2, 2009.

**UNDISPUTED FACTS**

Silver Oak Construction, Inc., is a California corporation incorporated on May 11, 2004, but inactive until 2006. Exhibit A, attached to Declaration of Karl Wolf ("Wolf Dec."); Deposition of Karl Wolf ("Wolf Dep.), p. 148. Wolf has always been the 100 percent owner and president of Silver Oak. Wolf Dec., ¶ 1; Wolf Dep., pp. 70, 97, 149.

In December 2005, Silver Oak submitted an application and supplemental application for workers' compensation insurance to SUA. Exhibit A, attached to Declaration of Patrick Gorman ("Gorman Dec."). "Silver Oak Construction, Inc." is listed as the applicant. Exhibit A, attached to Gorman Dec. Contact information is listed for Karl Wolf. The questionnaire included a question as to whether the applicant had "Any tax liens or bankruptcy within the last five years." Silver Oak answered, "no." Based on the representations in the application, SUA issued a workers' compensation insurance policy to Silver Oak for the period December 20, 2005, through December 20, 2006. Exhibit A, attached to Gorman Dec; Declaration of Brian Fischer ("Fischer Dec."), ¶ 4.

In December 2006, Silver Oak submitted an application to renew the workers' compensation policy. Exhibit A, attached to Gorman Dec; Exhibit C, attached to Complaint. "Silver Oak Construction, Inc." was listed as the applicant. The application listed Karl Wolf as the contact. Based upon the representations contained therein, SUA extended the workers' compensation policy for the period December 20, 2006, through December 20, 2007. Fischer Dec., ¶ 7.

SUA uses an "E-comp" program that incorporates underwriting guidelines and determines acceptance. "E-comp" includes automated templates that do not provide for discretion. The program is intended to prevent any type of major risk exposure. The first policy was processed through the E-comp program and the renewal application incorporated the underwriting guidelines of the E-comp program. Fischer Dec., ¶¶ 2-6, 9.

On or about November 1, 2007, Silver Oak employee Oberlin Sanchez was injured while allegedly in the course and scope of him employment, resulting in a claim for benefits under the 2006-2007 policy. Wolf Dec., ¶ 4.

## **LEGAL STANDARD**

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any

genuine issues of material fact," the burden of production shifts and "the non moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Electric Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)(quoting Fed.R.Civ.P. 56(e)).  As to the specific facts offered by the nonmoving party, the court does not weigh conflicting evidence, but draws all inferences in the light most favorable to the nonmoving party.  Id. at 630-31.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at

1  255, and all reasonable inferences that may be drawn from the facts placed before the court must
2  be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v.
3  Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out
4  of the air, and it is the opposing party's obligation to produce a factual predicate from which the
5  inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D.
6  Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

7  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
8  show that there is some metaphysical doubt as to the material facts . . . . Where the record taken
9  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
10 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**DISCUSSION**

12  Silver Oak's motion is premised on its belief that SUA cannot prove that Silver Oak had
13 filed bankruptcy or had any tax liens filed against it within five years of the date it submitted the
14 initial applications and the renewal applications.

15  There does not appear to be any dispute as to the applicable California insurance law.
16 SUA must prove the existence of a material representation and/or concealment of material facts
17 to prevail on its claims. Cal. Ins. Code § 359. "The fact that the insurer has demanded answers
18 to specific questions in an application for insurance is in itself usually sufficient to establish
19 materiality as a matter of law." Old Line Life Ins. Co. v. Superior Court, 229 Cal.App.3d 1600,
20 1603-1604 (1991) (internal citation omitted). It is irrelevant whether the misrepresentation
21 and/or concealment are intentional or unintentional. West Coast Life Ins. Co. v. Ward, 132
22 Cal.App.4th 181, 186-187 (2005); Cal. Ins. Code § 331.

23  In support of its motion, Silver Oak argues that the applications at issue clearly state that
24 Silver Oak Construction, Inc. was the applicant, not Karl Wolf. Silver Oak, a corporation that
25 has no tax liens against it and has not filed for bankruptcy, therefore answered the question
26 regarding liens and bankruptcies correctly by answering "No." Indeed, there is no dispute that
27 the corporation had no tax liens or bankruptcies in the past five years.

SUA attempts to defeat summary judgment by arguing that Wolf knew that he should have been answering the liens and bankruptcy questions on his own behalf. Specifically, because he answered certain questions on the 2005 and 2006 applications as they pertained to his sole proprietorship, SUA contends that he knew he should have revealed his personal tax liens and 2002 bankruptcy. SUA therefore believes that the "No" responses were false and misleading.

SUA's argument, however, does not negate the truth of the "No" responses. Silver Oak, as the applicant and insured, has not had any tax liens or bankruptcies in the past five years and SUA cannot prove otherwise. The question did not ask for this information as it related to principals or officers, nor did any other question on the applications seek information about anyone or anything other than the applicant (and subsequently insured), Silver Oak.

In other words, Silver Oak did not misrepresent or conceal any information as it related to the tax liens and bankruptcy questions, which are at the core of SUA's complaint. He simply did not volunteer information about himself. The fact remains that SUA **did not request** this information and their argument that Wolf should have known that he should have answered the tax lien and bankruptcy questions as they pertained to him is irrelevant. The truth of the "No" answers and SUA's argument are mutually exclusive. That he answered other questions based on his sole proprietorship does not change the fact that he answered the questions at issue truthfully as they pertained to Silver Oak, the applicant.

The fact that SUA did not request Wolf's personal lien/bankruptcy distinguishes the tax lien and bankruptcy questions from the years in employment questions, etc. Even assuming that his reasons for answering those questions based on the sole proprietorship were questionable, he responded to direct, specific questions. SUA asks the Court to impute a requirement on Wolf that he should have answered a question that was not asked. Such an obligation is not only unjustifiable, but is, more importantly, insufficient to defeat summary judgment.

Moreover, SUA's argument is based on the assumption that Wolf intended to mislead SUA. Intent, however, as it relates to recision, is irrelevant. Cal. Ins. Code § 331. What Wolf intended to do, or what he understood he should have done, has nothing to do with whether he answered the lien/bankruptcy questions candidly. Wolf's state of mind is irrelevant and does not

6

change the end result.  Silver Oak neither misled or concealed information by answering "No" to the lien/bankruptcy questions, and SUA received an accurate answer to its question, as written.

### **ORDER**

Accordingly, based on the above analysis, IT IS HEREBY ORDERED that:

1. Silver Oak's motion for summary judgment is GRANTED; and
2. Judgment be entered in favor of Defendant Silver Oak Construction, Inc., and against Plaintiff SUA Insurance Company.

IT IS SO ORDERED.

**Dated:   February 3, 2009**          **/s/ Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE